**YUMA COUNTY WATER USERS' ASSO-
CIATION, Yuma, Arizona, Plaintiff,**

v.

**Stewart L. UDALL, Secretary of the
Interior, Defendant.**

**Civ. A. No. 1499–64.**

United States District Court
District of Columbia.

July 22, 1964.

Charles F. Wheatley, Jr., Robert L.
McCarty, Washington, D. C., Bryant W.
Jones, Rolle, Jones & Miller, Yuma, Ariz.,
for plaintiff.

Walter Kiechel, Jr., Dept. of Justice,
Washington, D. C., for defendant.

LEONARD P. WALSH, District
Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for hearing before the undersigned on July 21, 1964, on a Motion for Preliminary Injunction. The plaintiff Association asks the Court to restrain the Secretary of the Interior from enforcing an order issued May 16, 1964, effective June 1, 1964, reducing by ten per cent the delivery of irrigation water to the plaintiff. Plaintiff alleges a preliminary injunction is necessary to avoid irreparable damage by way of injury to crops now growing in the area concerned, located south of Yuma, Arizona, and along the east side of the Colorado River to the Mexican Border.

In opposition to the motion the defendant asserts this Court is without jurisdiction, in that this is an action against the United States in that it seeks to enjoin the exercise by a federal official of a power delegated to him by the United States, and the United States has not consented to be sued in the case; and further asserts that plaintiff has not exhausted its administrative remedies, and plaintiff has an adequate remedy at law.

The Court has heard testimony and arguments of counsel, and has reviewed the pleadings and affidavits in the file, and after consideration of the same makes the following findings of fact and conclusions of law:

1. The Plaintiff is a non-profit private corporation operating under the laws of the State of Arizona. Its members are farmers in the Valley Division, Yuma Project, Arizona, who depend on water from the Colorado River for irrigated lands.

2. The defendant is the Secretary of the Interior of the United States, and is charged with the administration of the

laws relating to the storage and delivery of waters of the main stream of the Colorado River.

3. The lands within the Yuma Project were first irrigated by water from the Colorado River in 1890. These lands were included in the Yuma Reclamation Project in 1904 by authority of the Reclamation Act of 1902.

4. In 1906 the Secretary of the Interior entered into a contract with the plaintiff which provided for individual water right agreements.

5. Water was diverted to the project in 1912 from Laguna Dam through the Yuma Main Canal under the Colorado River by a siphon. Subsequent to the completion of the Imperial Dam in 1938, water has been diverted through the All-American Canal to Siphon Drop and then through the Yuma Main Canal.

6. On June 15, 1951, the plaintiff entered into a contract with the United States whereby the association would provide for the operation and maintenance of the project works and the defendant agreed to deliver water from Lake Mead to the plaintiff through the Yuma Main Canal. That contract expressly provides that rights previously acquired by the association and landowners are to remain unimpaired, and that the contract is subject to the provisions of the Boulder Canyon Project Act, the Colorado River Compact, and the Mexican Water Treaty.

7. The contract between the parties, dated June 15, 1951, provides, *inter alia:*

"12(a). As far as reasonable diligence will permit, the United States will, * * * from storage available in Lake Mead, deliver to or for the Association through the Yuma Main Canal * * * such quantities of water, * * * as may be ordered by the Association and as may be reasonably required and beneficially used for the irrigation of the irrigable lands situate within the division * * * *"

8. The defendant, pursuant to the 1951 contract, did deliver vast quantities of water during the period 1951 through the present time.

9. On May 16, 1964, the defendant announced that he was ordering a ten per cent reduction in water deliveries, effective June 1, 1964. This will amount to a reduction of 20,300 acre-feet of water during the period June, 1964, through December, 1964. The letter of May 19, 1964, implementing the action of the Secretary of May 16, 1964, provides for flexibility with regard to the reduced deliveries.

10. Due to the low water levels at Lake Powell and Lake Mead on May 11, 1964, the defendant closed the gates at Glen Canyon Dam in order to bring Lake Powell to minimum power operating level. On May 16, 1964, the defendant announced the ten per cent reduction to the Lower Basin users in order to replenish the water in Lake Mead.

11. The plaintiff alleges irreparable injury to the crops in the Division as a result of the ten per cent reduction in the water. However, this Court finds as a fact that no irreparable injury has been established; that based on the affidavit by Peter R. Kiernan, Supervising Hydraulic Engineer, Yuma Projects Office, Bureau of Reclamation, the following undisputed statements are adopted as facts:

(a) The Yuma County Water Users' Association has consistently over-ordered water, substantial portions of which it has rejected after the water has been released at Parker Dam.

(b) That once the water is released from Parker Dam it is not possible for that water-user organization to conserve the water which is not required. That water not required is, in rare instances, utilized by other water-user organizations, or otherwise wasted so that it flows down the Colorado River to Mexico.

(c) According to the figures of Mr. Kiernan, in 1962 the Association ordered 431,830 acre-feet of water, of which 18 per cent, or 76,480 acre-feet, was rejected; in 1963, 421,470 acre-feet was ordered, and 18 per cent, or 77,360 acre-

feet, was rejected; and, for the first five months of 1964, 163,840 acre-feet were ordered, of which 13 per cent, or 21,380 acre-feet, was rejected.

12. Mr. Theodore H. Moser, Project Manager, Yuma Projects Office, Bureau of Reclamation, testified in open court that a large amount of water ordered by the Yuma County Water Users' Association is diverted into lateral wastes and. is not applied to any farms, but is passed through the irrigation facilities and ultimately flows to Mexico. This waste, according to the undisputed testimony of Mr. Moser, amounted to 12.27 per cent of the total diversion in the last seven months of 1961, 12.49 per cent for the like period of 1962, and 13.25 per cent for the final seven months of 1963.

13. These statements by Mr. Kiernan and Mr. Moser can lead only to the conclusion that no injury has been established; and that the four affidavits by members of the Association, which were submitted by the plaintiff, are merely speculative as to possible damages which may be sustained in the future. However, in view of the statement of the Secretary that flexibility in the reduction will be accorded the users, and the statement by Mr. Moser that cases of individual hardship will be supplied with water, any possible crop damage would appear remote.

### Conclusions of Law

1. This Court has jurisdiction over this act, if it is established that the order of the Secretary is in excess of his authority.

In Ickes v. Fox, 300 U.S. 82, 96–97, 57 S.Ct. 412, 417, 81 L.Ed. 525 (1937), an action to enjoin the Secretary of the Interior from enforcing an order which would limit the water rights of owners of irrigated lands under a Federal reclamation project, the Supreme Court stated:

" * * * [The suits] are brought to enjoin the Secretary of the Interior from enforcing an order, the wrongful effect of which will be to deprive respondents of vested property rights not only acquired under Congressional acts, state laws and government contracts, but settled and determined by his predecessors in office. That such suits may be maintained without the presence of the United States has been established by many decisions of this court * * * * ".

More recently, in Arizona v. California, 373 U.S. 546, 584–585, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963), the Supreme Court, in passing upon the question of judicial review of the Secretary's actions, cited Ickes v. Fox, supra, with approval.

2. The plaintiff has not established any irreparable injury and therefore is not entitled to the extraordinary remedy of a preliminary injunction.

3. This Court does not decide the question of whether or not any vested property rights of the members of the plaintiff association have been violated; or, whether the defendant Secretary has exceeded his statutory authority.

4. For the purposes of the motion for preliminary injunction, the plaintiff has not established any arbitrary action on the part of the Secretary.

### ORDER

In accordance with the foregoing Findings of Fact and Conclusions of Law, it is this 22nd day of July, 1964,

Ordered, that the plaintiff's motion for a preliminary injunction be, and the same hereby is, denied.